**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 96-21162
Summary Calendar

_____

THE COCA-COLA COMPANY,

Plaintiff-Appellee,

VERSUS

BOSTON'S BAR SUPPLY, ET AL.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-94-CV-3266)

_____

August 12, 1997

Before REYNALDO G. GARZA, DAVIS, and DUHE', Circuit Judges.

PER CURIAM:[*]

This appeal arises from the granting of a motion for judgment as a matter of law in favor of Coca-Cola, plaintiff-appellee, in a trademark infringement case. The order by the lower court was granted on the grounds that the defense of acquiescence was unavailable to Boston's Bar Supply and Donald Mansfield ("Boston's"), defendants-appellants. Defendants appeal the decision of the district court.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4

**Facts and Summary of Proceedings**

In November of 1987 Donald Mansfield began operating a bar supply and equipment company called Boston's Bar Supply. Boston's is a full service bar supplier in that it provided all the supplies necessary for the function of a bar or tavern. Consequently, Boston's opened an account with Houston Coca-Cola Bottling Company to distribute all of Coca-Cola's products with the exception of Coca-Cola fountain syrups. In order to satisfy Coca-Cola fountain syrup customers, Boston's purchased fountain syrup from distributors such as Sysco Food Services of Houston, Inc., and White Swan, Inc., and turned around and sold the syrup to its own customers.

In 1988, Boston's applied for a Coca-Cola direct distributorship for fountain syrup. Coca-Cola denied the application stating that Sysco and White Swan had adequate coverage of the bar and tavern market. Undaunted, Boston's continued to purchase, for distribution, fountain syrups from Sysco and White Swan and again applied for a direct distributorship in 1991. However, Boston's was again denied.

In 1993, Coke advised Boston's that its distribution of fountain syrups was illegal and demanded that Boston's cease and desist the distribution of these syrups. Notwithstanding its demand, Coca-Cola continued to sell fountain syrups to Boston's

through Sysco.  In 1994, Coca-Cola sent another cease and desist letter and proceeded to file suit for injunctive relief on September 22, 1994, alleging federal and state trademark violations.

On September 13, 1994, Boston's filed its answer and counterclaim including the equitable affirmative defenses of waiver, estoppel, and acquiescence.  On September 12, 1995, Coca-Cola filed its motion for preliminary injunctive relief to which Boston's filed a reply.  On January 31, 1996, Boston's filed a second amended counterclaim, alleging violations of the Texas Deceptive Trade Practices Act ("DTPA").  On June 4, 1996, the district court denied Coca-Cola's request for preliminary relief stating that Coca-Cola may enforce its trademark against Boston's subject only to the question of Boston's affirmative defense of acquiescence.

On June 17, 1996, the district court set the case for trial and ordered that no further dispositive motions would be considered.  However, Boston's subsequently filed a motion for leave to amend its answer and counterclaim.  Additionally, Coca-Cola filed a motion for leave to file a motion for partial summary judgment and submitted a memorandum of law in support of the motion.  On October 22, 1996, the court granted leave to both parties to file their respective documents and subsequently granted Coca-Cola's motion for summary judgment and ruled that Boston's was not a consumer for purposes of the DTPA.

3

The court excused the jury panel finding that a jury was unnecessary since the only issue remaining was an equitable one. The court proceeded to hear Boston's evidence on that issue and, after Boston's rested, it granted Coca-Cola's motion for judgment as a matter of law.

Boston's appeals this decision.

**Trademark Infringement**

Boston's first argues that the court erred in initially applying trademark law to the present situation. In order to prevail in an action for trademark infringement, a plaintiff must show two things: (1) that it has a protectable property right in the name it seeks to defend from use by others; and (2) that there is infringement, as judged by the likelihood of confusion. *Security Center, Ltd. v. First Nat. Sec. Centers,* 750 F.2d 1295 (5th Cir. 1985).

There is no question that Coca-Cola has a protectable property interest right in its trademark. Similarly, there is no question that there is a *possibility* of confusion by potential customers, in that the products which may be sold by Boston's would not be "genuine" Coca-Cola products because they would not be subject to the quality controls as set forth by Coca-Cola. See *Shell Oil Co. v. Commercial Petroleum, Inc.,* 928 F.2d 104, 107 (4th Cir. 1991); see also *Polymer Technology Corp. v. Mimram,* 37 F.3d 74, 78 (2d Cir. 1994).

4

Therefore, trademark law does apply to the present situation.

**Acquiescence**

Appellant next argues that the court erred in granting Coca-Cola's judgment as a matter of law on the grounds that there was no acquiescence on the part of Coca-Cola.

In denying Coca-Cola's preliminary injunction, the court cited *Conan Properties Inc. v. Conans Pizza,* 752 F.2d 145, 153 (5th Cir. 1985)(citing *Dwinell-Wright Co. v. White House Milk Co.* 132 F.2d 822, 825 (2d Cir. 1943), defining acquiescence as implicit or explicit assurances which induce reliance. However, in granting Coca-Cola's judgment as a matter of law with regards to Coca-Cola's request for a permanent injunction, the court strayed from the Fifth Circuit precedent it set out in its previous ruling denying injunctive relief and relied on *Coach House Restaurant v. Coach and Six Restaurants,* 934 F.2d 1551 (11th Cir. 1991). The Court in *Coach* defined acquiescence as "*actively* representing that it would not assert a right or a claim; that the delay between the active representation and assertion of right or claim was not excusable; and, that the delay caused the defendant undue prejudice." *Coach,* 934 F.2d at 1558.

We, in *Conans,* adopt a passive approach to acquiescence while the Eleventh Circuit, in *Coach,* describes a more active type of acquiescence. The lower court correctly applied Fifth Circuit law in denying Coca-Cola's preliminary injunction, but disregarded the

5

law of this Circuit and incorrectly applied Eleventh Circuit law in granting the permanent injunction. It essentially applied the facts presented to two different sets of legal criteria.

The legal definition for acquiescence is set out by this Court in *Conans.* This is the legal gauge to which the facts should have been applied. The district court erred in relying on Eleventh

Circuit law to set the standard for acquiescence when we had already done so.

**DTPA -- summary judgment**

Lastly, Boston's argues that the court erred in granting partial summary judgment without giving it adequate notice and an opportunity to respond. In short, the district court did err, procedurally, by granting summary judgment on an issue to which the non-movant had no opportunity to address in a brief. However, we review such error for harmlessness. *Leatherman v. Tarrant County Narcotics Intelligence,* 28 F.3d 1388, 1398 (5th Cir. 1994). Since there is no additional evidence of Boston's undertakings with Coca-Cola, then Boston's, under the law, is not a consumer for DTPA purposes. See *American Distributing Corp. v. ACS Communications, Inc.,* 990 F.2d 223 (5th Cir. 1993); see also *Clardy Mfg. Co. v. Marine Midland Business Loans, Inc.,* 88 F.3d 347 (5th Cir. 1996). As such, this error is harmless.

**Conclusion**

Based on the foregoing, the district court's decision granting Coca-Cola's motion for judgment as a matter of law is REVERSED and REMANDED with instructions to have the issue of acquiescence resolved under the proper standard for acquiescence, as set out by this Court in *Conans,* 752 F.2d 145 (5th Cir. 1985).